1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   ANTWAUN T. BEAVERS, SR.                    CASE NO. CV-F-02-5537 LJO

10                    Plaintiff,

                                               **MEMORANDUM DECISION AND ORDER**
11                                             **ON PLAINTIFF'S APPEAL FROM**
        vs.                                    **ADMINISTRATIVE DECISION** (Doc. 26)
12

13   JO ANNE BARNART,
     Commissioner of Social Security,
14
                      Defendant.
15   _____/

16          Plaintiff Antwaun T. Beavers ("claimant") seeks judicial review of an administrative decision

17   denying his claim for Disability Insurance Benefits and Supplemental Security Income under the Social

18   Security Act ("Act").  Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to

19   proceed before a United States Magistrate Judge, and by an October 10, 2002 order, this action was

20   assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending

21   before the Court is claimant's appeal from the administrative decision of the Commissioner of Social

22   Security ("Commissioner").[1]

23          Claimant filed his complaint on May 8, 2002 and following remand, his opening brief on October

24   3, 2005.  The Commissioner filed her opposition to the appeal on November 7, 2005.  Claimant filed

25   a reply brief on November 22, 2005.

26   _____

27       [1] On October 2, 2002, this case was remanded for further administrative proceedings, and in particular to search for
     claimant's claim file.  The claim file was not located, and a new administrative hearing before an Administrative Law Judge
28   ("ALJ") was held.  The resulting February 24, 2005 decision is the subject of this appeal.

                                                    1

**BACKGROUND**

**Administrative Proceedings**

This action arises under the Social Security Act, Title II and XVI.  Claimant filed an application for a period of disability, disability insurance benefits, and Supplemental Security Income benefits on September 1, 1999, alleging an onset of disability from November 20, 1990.  The Commissioner denied the applications initially and upon reconsideration.  After a third de novo hearing, the Commissioner issued a decision determining that claimant retained the ability to perform light work including his past relevant work.  The Appeals Council denied review.  Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**Claimant's Background**

Claimant was born on June 11, 1971.  (Administrative Record "AR" 336.)  He completed the eleventh grade.  (AR 336.)

**Medical History**

The ALJ admitted into evidence claimant's submitted medical records.

In November 1990, claimant was hospitalized with pneumonia following a chemical exposure.  (AR 138.)  His left lung collapsed and he had emergency surgery.  (AR 138.)  A portion of his left lung was removed.  (AR 138.)

On October 10, 1999, claimant presented for a comprehensive internal medicine examination by Emanuel Dozier, M.D.  (AR 161.)  Claimant complained of severe left-sided chest pain with shortness of breath and a cough with bloody phlegm.  (AR 161.)  Claimant reported that his activities of daily living are limited to watching television, no hobbies, and no household chores.  (AR 162.)  Claimant reported an open lung biopsy in 1990.  Dr. Dozier diagnosed status post left thoracotomy with residual chronic pain syndrome, morbid obesity, and uncontrolled hypertension. (AR 165.) Dr. Dozier functionally assessed claimant with ability to sit and stand for two hours or less, walk one block, lift 20-30 pounds occasionally, less than one-third of a day; unable to bend or stoop, able to handle, grasp, feel and finger.  (AR 165.)

Claimant was seen at Kern Medical Center form October 13, 1999 to December 3, 1999.  (AR 170-178.)

1    A pulmonary function test on September 1, 2000 showed a moderate obstructive lung defect,

2    with a decreased in flow rate.  (AR 190.)

3    On September 8, 2000, Rosie Martinez, P.A. of Family Practice responded to a questionnaire that

4    Claimant is totally disabled due to moderate pulmonary disease, uncontrolled hypertension, hyper

5    lipdinea and chronic chest wall pain.  (AR 192.)  Ms. Martinez opined that claimant cannot do any lifting

6    and can only sit, stand, walk for one hour, based on claimant's subjective statements.  (AR 192.)

7    On May 29, 2001, Valentine G. Birds, M.D., of Budget Medical Clinic, opined that claimant

8    could not sit, stand or walk at all during an eight hour day, was unable to lift or carry any weight, or push

9    and pull.  (AR 199.)

10    On August 8, 2001, claimant presented for a comprehensive internal medicine evaluation by Julie

11    Bevan, M.D.   (AR 200-204.)  Claimant's chief complaints were shortness of breath, and chest pain

12    secondary to chest tube insertion.  (AR 200.)  Observation at the examination showed claimant able to

13    walk, transfer to the table and move about without distress or dyspneic on exertion.  (AR 201.)  On

14    examination of his lungs, there was no evidence of clubbing, rales, crackles or wheezes.  (AR 203.)  Dr.

15    Bevan functionally assessed claimant as able to stand or walk six hours in an eight hour workday, with

16    normal breaks, sit without restriction, lift and carry 20 pounds frequently, with some limitations as to

17    reaching with the left side.  (AR 204, 205-208.)

18    On November 1, 2004, Dr. Birds wrote letter indicating the claimant was totally and permanently

19    disabled due to continuing and increasing pain in his left chest which is aggravated by almost any

20    activity and has depression.  (AR 261-262.)  Dr. Bird opined claimant cannot lift, stand or walk for even

21    one hour.  (AR 261.)

22                                    **Hearing Testimony**

23    Claimant testified that the reason he cannot work is that in December 1991, he was exposed to

24    chemicals which damaged his lungs.  (AR 339.)  He lives with his mom.  (AR 340.)  He cannot work

25    because every time he lifts, he get sharp muscle spasms in his left side, chest area.  (AR 340.)  Anything

26    strenuous hurts his left chest area.  (AR 341.)  He can lift a fork and plate.  (AR 341.)  He becomes

27    winded if he walks a block.  (AR 341.)  He has shortness of breath whether he is sitting or standing.

28    (AR 341.)  He has been told by his treating physician that he has nerve damage in his left lobe area.  (AR

3

342.)  He is unable to afford his medication, so he takes over the counter medicine.  (AR 342.)  He watches TV during the day and rests.  He has no other activities.  (AR 343.)  When he was on medication, it helped.  (AR 344.)  He has pain when he inhales or takes a deep breath.  (AR 345.)

Claimant testified that he was on parole after serving 22 months.  (AR 346.)  In prison, he swept or mopped.  (AR 349.)  After he go out, he was a stocker where he puts things on shelves in a warehouse.  (AR 349.)  He left this job because he kept getting sick.  (AR 349.)

**ALJ Findings**

In his February 24, 2005 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled.  (AR 17.)  In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 27-28):

1.   The claimant alleges a disability onset date of November 20, 1999.

2.   The claimant has a spotty work record resulting in periods of insurance and non insurance under Title II of the Social Security Act.

3.   The claimant was insured from July 1, 1992 through June 30, 1993, from July 1, 1997 through September 30, 1997 and from January 1, 1998 through September 20, 1999.

4.   The claimant was not engaging in substantial gainful activity in 1991, 1993, 1994, and from January 1, 1999 through December 31, 2003.

5.   The claimant was engaging in substantial gainful activity during the twelve months of 1996.

6.   It is unnecessary to the outcome of this decision to determine if the claimant was engaging in substantial gainful activity from November 20, 1990 through December 31, 1995 or from January 1, 1997 through the date of this decision and the sequential analysis process will continue as though the Claimant had not engaged in substantial gainful activity from November 20, 1990 through December 31, 1995 or from January 1, 1997 through the date of this decision.

7.   The medical evidence establishes the claimant has the "severe" impairments of moderate restrictive and moderate obstructive pulmonary disease, obesity and mild chest pain secondary to 1991 chest surgery.

4

8.   The claimant does not have an impairment, or combination of impairments, listed in or medically equal to one listed in 20 CFR Part 404, Subpart P, Appendix 1.

9.   The claimant is not credible and his testimony and allegations are given no evidentiary weight.

10.  The claimant has the residual functional capacity to perform a wide range of light work that precludes lifting and carrying more than twenty pounds occasionally and ten pounds frequently, standing, walking, or sitting for more than about six hours of an eight-hour workday, more than occasional stooping, crouching and climbing of stairs, that precludes all overhead work activity using the left upper extremity and that avoids excessive exposure to pulmonary irritants.

11.  The claimant has past relevant work as a stocker and janitor.

12.  The claimant described his past jobs and reported that none of his past jobs required him to lift in excess of twenty pounds or to perform more than occasional stooping, crouching and climbing of stairs.

13.  The claimant's past relevant work as a stocker or as a janitor, as the claimant described the jobs, does not require the performance of work activity that is precluded by the claimant's residual functional capacity.

14.  The claimant remains capable of performing his past relevant work as a stocker or as a janitor, as the claimant described the jobs.

15.  The claimant must accordingly be found to be "not disabled" within the meaning of the Social Security Act.

16.  The claimant was not under a "disability" as defined in the Social security Act at any time through the date of this decision.

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,*

760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ erred by improperly evaluating the evidence at Step 4 of the sequential analysis: (1) failing to use a vocational expert to determine the limitation of his left arm on his past relevant work, (2) erred in using the grids as an alternative finding, (3) failing to consider claimant's depressive disorder, and (4) rejecting the treating opinion of Dr. Birds.

### The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1.   Determination of whether the claimant is engaged in substantial gainful activity, and if

6

1   so engaged, the claimant is not presumed disabled and the analysis ends;

2       2.    If not engaged in substantial gainful activity, determination of whether the claimant has

3           a severe impairment; if the claimant does not, the claimant is not presumed disabled and

4           the analysis ends;

5       3.    If the claimant has a severe impairment, determination of whether any such severe

6           impairment meets any of the impairments listed in the regulations;[2] if the claimant does

7           have such an impairment, the claimant is disabled and the analysis ends;[3]

8       4.    If the claimant's impairment is not listed, determination of whether the impairment

9           prevents the claimant from performing his or her past work;[4] if the impairment does not,

10          the claimant is not presumed disabled and the analysis ends; and

11      5.    If the impairment prevents the claimant from performing his or her past work,

12          determination of whether the claimant can engage in other types of substantial gainful

13          work that exist in the national economy;[5] if the claimant can, the claimant is not disabled

14          and the analysis ends.

15      The claimant has the initial burden of proving the existence of a disability within the meaning

16  of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima

17  facie case of disability by showing that a physical or mental impairment prevents him from engaging in

18  his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§

19  404.1520(f) and 416.920(f).

20

21

---

22      [2]    *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

23      [3]    If a claimant is found to have an impairment which meets or equals one of the listed impairments, a

24  conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

25

26      [4]    At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

27

28      [5]    At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## The ALJ's Finding of Residual Functional Capacity

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that claimant had the residual functional capacity to perform light work, with restrictions. Under the applicable regulations, "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b). If someone can do light work, it is determined that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567 and 416.967. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

Claimant criticizes the ALJ for rejecting the opinion of treating physician Dr. Birds, who opined that claimant is totally disabled. Claimant contends that Dr. Birds' opinion is that he is disabled and unable to work at even a sedentary level, and therefore, cannot perform the light work found by the ALJ.

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762,

n. 7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and ambiguities in treating physician's opinion concerning level of disability sustained by social security claimant, were specific and legitimate reasons for not accepting physician's opinion.)

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing.

*Rodriquez,* 876 F.2d at 762.

The ALJ reviewed all of the objective medical evidence in the record, including the records and opinions of Dr. Birds. There is no argument that the ALJ failed to properly do so.

The ALJ noted that in May 2001, Dr. Birds found claimant unable to lift, sit, stand or walk. (AR 22.) The ALJ considered and rejected each of Dr. Birds' letter opinions with explicit reasons. The ALJ noted that in the September 2001 letter, Dr. Birds merely restated many of the claimant's subjective allegations that were related by the claimant: "Dr. Birds goes on to state that the claimant as been disabled since December 1990. As an example of the claimant inability to perform work activity, Dr. Birds states that the claimant attempted to return to work in 1997, but that he failed in that attempt." (AR 22.)   The ALJ contrasted Dr. Birds' opinion, which was based upon claimant's reported failed attempt to return to work, with claimant's work history:

> "However, I find it highly interesting that Dr. Birds did not mention the work activity of the claimant in 1996 that was at the substantial gainful activity for a period of twelve months. Nor did Dr. Birds mention that the claimant worked long enough in 1997 to earn $2523.53 and that he continued to work in 1998 and earned $4837.75." (AR 22) (evidence citations omitted.)

The ALJ stated specifically why the evidence was rejected:

> "Simply reading Dr. Birds' statements in the September 7, 2001 letter would lead a person to believe the claimant attempted to return to work in 1997 for a few days or a coupled of weeks, but that he had to quit working due to his symptoms and limitations. However, the statements and implications of Dr. Birds in the September 7, 2001 letter are not supported by, and are

1    generally inconsistent with, the documentary evidence in the record."
     (AR 22.)
2    The ALJ also reviewed the February 26, 2002 letter from Dr. Birds, wherein he opined that claimant's

3    condition had worsened and that claimant was "totally and permanently disabled." (AR 22.)  The ALJ

4    contrasted this opinion with claimant's medical prison records:

5            "Subsequently to the opinions of Dr. Birds discussed above, the claimant
             entered prison. The longitudinal history in the claimant's medical records
6            from prison indicates he was medically cleared for full work duty without
             any restrictions."  (AR 23) (evidence citations omitted.)
7

8    The ALJ discussed the prison medical records at length in his decision, noting the diagnoses.  (AR 20.)

9            "The claimant's medical records from prison reveal he was treated for
             allergies sinusitis and getting foreign matter in his eyes with subsequent
10           eye infections, but do not indicate he complained of shortness of breath
             from the prior chest surgery, as he is now alleging.  The claimant's
11           records from prison reveal that, on February 25, 2003 and again on March
             15, 2003 he was medically cleared for working *without any restrictions*
12           *at all* being placed on him."  (AR 21) (Evidence citations omitted,
             Emphasis in original.)
13

14   Thus, the ALJ compared the severe restrictions placed on claimant by Dr. Birds with the subsequent,

15   prison medical records which did not restrict claimant's functionality.  "The medical sources treating

16   the claimant during his imprisonment had the opportunity to examine the claimant on multiple occasions

17   and to review medical records accumulated over a long time period, as compared to the minimal

18   treatment record from the Budget Clinic." (AR 23.)

19           The ALJ found the next letter from Dr. Birds, dated November 1, 2004 as internally inconsistent.

20   (AR 23, citing 262, 263, internal inconsistency in the time claimant is capable of sitting, standing and

21   walking and also inconsistency in the date disability began.)  The ALJ noted that while Dr. Birds opined

22   that claimant was disabled from November 1991, "Dr. Birds openly admitted that the claimant had not

23   been treated at the Budget Clinic before May 29, 2001."  (AR 23.)  The ALJ also relied upon the

24   existence of "only a single medical record of the claimant receiving treatment from the Budget Clinic

25   in evidence, which is dated May 29, 2001." (AR 23.)  The ALJ found that this single examination and

26   Dr. Birds' resulting opinion were "grossly inconsistent with the subsequent opinions of two different

27   internal medicine consultative examiners, whose opinions include a wealth of recorded objective clinical

28   findings supporting their much less restrictive opinions."  (AR 23.)  Thus, the ALJ rejected Dr. Birds'

                                                    10

opinion as inconsistent with other objective medical opinions in the record, inconsistent with claimant's medical history, and inconsistent with claimant's actions.  These are legally sufficient reasons to reject the opinions.

Claimant argues that the ALJ erred in rejecting Dr. Birds' diagnosis that claimant suffered from depression.  Claimant argues that Dr. Birds consistently found depression from 2001 to 2004, and the ALJ solely referenced Dr. Birds' opinion in 2004.

The existence of a mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings.  20 C.F.R. §§ 404.1526(b) and 416.926(b); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(B).  Signs include psychological abnormalities which can be observed apart from symptoms and must be shown by medically acceptable clinical diagnostic techniques.  20 C.F.R. §§ 404.1528(b) and 416.928(b).  Psychiatric signs are medically demonstrable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation and contact with reality, and which must also be shown by observable facts that can be medically described and evaluated.  20 C.F.R. §§ 404.1528(b) and 416.928(b).  They are typically assessed by a psychiatrist or psychologist and/or documented by psychological tests.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(B).

The ALJ stated that "a letter from Dr. Birds, also dated November 1, 2004, does not provide significant information about any depression symptoms the claimant may have had or opine about any limitations resulting form [sic] the purported depression." (AR 18.)  The ALJ reviewed the only treatment note from Dr. Birds and stated: "The only medical record in evidence from Dr. Birds' treatment of the claimant makes no mention of depression." ( AR 18, citing AR 198, May 29, 2001 treatment note.)  Thus, the ALJ considered not only the 2004 diagnosis of depression, but also the 2001 treatment note.   The Record does not disclose "clinical signs, symptoms and/or laboratory or psychological test findings" of claimant's depression.  The ALJ stated that Dr. Birds' opinion of depression "stands alone in the record.  It is uncorroborated by any other physician or other medical evidence in the record." (AR 19.)  Indeed, the prison medical records do not note depression and the consultative examiners did not report symptoms of depression. (AR 165, 203.) Claimant did not report depression to the consultative examiners. (AR 161, 200.)

11

1    Thus, there is substantial evidence in the record to support the ALJ's evaluation of Dr. Birds'

2  opinion. *See Allen v. Sec'y of Health & Human Servs.,* 726 F.2d 1470, 1473 (9th Cir.1984) ("It is the

3  ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the

4  evidence, the ALJ's conclusion must be upheld.").

5                                    **Past Relevant Work**

6    Claimant argues that the ALJ should have used a vocational expert to determine if he could

7  perform his past relevant work as a stocker, given his restriction in overhead reaching with his left arm.

8    At step four, the vocational expert's testimony is useful, but not required. *Matthews v. Shalala*,

9  10 F.3d 678, 681 (9th Cir. 1993); *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (VE

10  testimony is not required at step four where claimant retains burden of showing she cannot perform her

11  past relevant work). Thus, there was no error in failing to use a vocational expert.

12    Claimant argues that the ALJ found him restricted from overhead reaching on the left side.

13  Claimant argues that the ALJ erred in failing to consider this restriction in the ability to perform

14  claimant's past relevant work as a stocker.  He argues that "commonsense" mandates a finding that a

15  merchandise stocker requires overhead reaching.

16    The issue for the Court is whether claimant has carried his burden of proof at step four.  At step

17  four, the ALJ determines whether the impairments preclude claimant from performing his past relevant

18  work.  At step four, claimants have the burden of showing that they can no longer perform their past

19  relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th

20  Cir. 2001).  Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to

21  make the requisite factual findings to support his conclusion. SSR 82-62; *Pinto v. Massanari*, *supra*, 249

22  F.3d 840, 844.

23    To be capable of performing her past relevant work, the claimant must be able to perform:

24      1. The actual functional demands and job duties of a particular past
        relevant job; or

25

26      2. The functional demands and job duties of the occupation as generally
        required by employers throughout the national economy.

27  SSR 82-61; *Pinto v. Massanari*, 249 F.3d at 844.  This requires specific findings as to the claimant's

28  residual functional capacity, the physical and mental demands of the past relevant work, and the relation

of the residual functional capacity to the past work. SSR 82- 62 (emphasis added). The ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).

At step four, a claimant has the burden of describing the physical and mental demands of past work and of explaining any inability to return to it. *Pitchard v. Schweiker*, 692 F.2d 198 (1st Cir. 1982); *Walters v. Commissioner of Social Sec.*, 127 F.3d 525 (6th Cir. 1997) (Walters's own description of his daily and weekly routine do not contradict the ALJ's conclusion that Walters was able to perform the functions of his past job as a press operator.) The duty to inquire and make findings regarding a claimant's impairment as it relates to an ability to perform past work does not mean that the initial burden of proving a disability by showing an inability to perform past relevant work has been removed from the claimant. *Clem v. Sullivan*, 894 F.2d 328, 331-332 (9th Cir. 1990).

Here, the ALJ reviewed the claimant's statements of his duties as a stocker: "He reported that none of his past jobs required him to lift in excess of twenty pounds or to perform more than occasional stooping, crouching and climbing of stairs." (AR 25.) Claimant described his job as a stocker as "stocking auto parts on shelves bending, lifting," which did not require him to lift over 20 pounds and frequently 10 pounds. (AR 132.) At the hearing, claimant testified as to the performance of the stocker position:

> Q:   Some of this work was as a, a stocker, it says.
>
> A:   Yes.
>
> Q:   That require lifting and putting things on shelves and so forth?
>
> A:   Just - yeah, putting, putting small things on shelves. Most of the time they have like those electric dolly things.
>
> Q:   Right.
>
> A:   They have little, where you just stand on it and just push the button and they just take you where you want to go.
>
> Q:   Once you get to the shelf where you want to put the stuff, don't you have to manually put it up there?

13

1  A:      They have, they have a shelf - I worked in a warehouse, so all, all the things are on the
2          shelves were like spark pubs and small things like that.  The heavy stuff like alternators
3          an all that, they Saran wrap those coming off the truck and I was just getting on the
4          electric dolly and slide them over to where the diesel company can (INAUDIBLE) that,
5          so we weren't really allowed to life [sic] in at all."  (AR 348.)

6  Here, claimant's description of his past relevant work, as performed, did not include any overhead
7  reaching.  It was claimant's burden to prove that he could not perform his past relevant work.  The ALJ
8  found that claimant could so perform his past relevant work and found that claimant could meet the
9  exertional demands of lifting less than 20 pounds and that he could perform occasional stooping,
10 crouching and climbing stairs.  (AR 28, finding no. 12.)  The ALJ thus compared the claimant's residual
11 functional capacity and the physical and mental demands of the claimant's past relevant work.  *Pinto*,
12 249 F.3d at 845.  According to the facts before the Court, the functions performed by claimant, as he has
13 described, can still be performed by claimant with the restrictions as noted by the ALJ.

14      Since the ALJ did not err at Step Four, it is unnecessary for the Court to address the ALJ's
15 alternative finding at Step Five.

16                                    **CONCLUSION**

17 _____The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by
18 substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this
19 Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social
20 Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant
21 Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Antwaun T. Beavers, Sr.
22 IT IS SO ORDERED.

23 **Dated:   January 3, 2006**          _____**/s/ Lawrence J. O'Neill**_____
   b9ed48                               UNITED STATES MAGISTRATE JUDGE
24
25
26
27
28

                                           14